IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUIS L.,[1] | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | No. 24 C 16585 |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| MICHELLE A. KING, | ) | |
| Acting Commissioner of Social Security,[2] | ) | |
| | ) | |
|    Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Plaintiff Luis L.'s motion to reverse and remand the Administrative Law Judge's ("ALJ") decision denying his application for disability insurance benefits ("DIB") (D.E. 15) and Defendant's response asking the Court to affirm. (D.E. 20).

**I.    Procedural History**

Plaintiff applied for benefits in January 2022, alleging a disability onset date of November 2, 2021, which was later amended to June 12, 2020. (R. 17.) After a hearing, the ALJ issued a written decision denying Plaintiff's application on July 7, 2023, finding him not disabled under the Social Security Act (the "Act").[4] (R. 17-30.) This appeal followed.

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Acting Commissioner of Social Security, Michelle A. King, for her immediate predecessor, Carolyn W. Colvin, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On January 9, 2024, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to a magistrate judge for all proceedings (D.E. 8), and on September 10, it was reassigned to this Court for all proceedings, including entry of final judgment, without objection. (D.E. 18.)

[4] The Appeals Council subsequently did not assume jurisdiction (R. 1271-73), making the ALJ's decision the final decision of the Commissioner. *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024).

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 12, 2020. (R. 19.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, right hip tendinopathy and trochanteric bursitis, osteoarthritis of the bilateral hips, status post left knee replacement, and osteoarthritis of the right shoulder. (R. 20.) The ALJ determined that Plaintiff had no more than mild limitation in each of the paragraph B functional areas, and thus that his "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore nonsevere." (R. 20-21.) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal a Listing. (R. 22.) The ALJ assigned Plaintiff a residual functional capacity ("RFC") to:

> lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He is able to stand and/or walk for a total of about six out of eight hours. He is able to sit for a total of about six out of eight hours. He should be allowed to use a cane at all times when using stairs or when walking on uneven ground. The claimant can occasionally climb ramps and stairs, and he can occasionally stoop, kneel, balance, crouch and crawl, but he can never climb ladders, ropes or scaffolds. The claimant can reach overhead with his right upper extremity occasionally but not frequently. The claimant is limited to working in non-hazardous environments. . . .

(*Id.*) At Step Four, the ALJ found Plaintiff could perform his past relevant work ("PRW") as a Sales Agent, Insurance, and thus was not disabled under the Act. (R. 28-30.)

## III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.[5] The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

### IV. The ALJ's Step Four Finding Was Supported By Substantial Evidence.

Plaintiff contends that the ALJ's Step Four determination was erroneous for three reasons: (1) the ALJ "had no basis" to reject the VE's testimony that the need to use a cane on stairs and uneven surfaces precluded Plaintiff's PRW; (2) the ALJ "eliminated" the restriction against driving at work that he included in his first hypothetical question to the vocational expert ("VE")

---

[5] In his reply brief, Plaintiff argues that Defendant's "definition of the 'substantial evidence' standard of review . . . omits critical language," in particular, "the requirement that the ALJ support his conclusions with logical bridges that link the evidence to the findings." (D.E. 21: Pl. Reply at 1-3.) But as the Seventh Circuit clarified in *Warnell*, the "logical bridge" language does not add requirements to the substantial evidence standard; instead, the Seventh Circuit considers it to be merely a "shorthand" way to refer to the substantial evidence standard. *Warnell*, 97 F.4th at 1054 ("[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion'") (internal citation omitted).

"without any explanation;" and (3) the ALJ failed to resolve a conflict between his PRW and the Dictionary of Occupational Titles ("DOT") regarding occasional overhead reaching on one side. (D.E. 15: Pl. Mot. in Supp. of Remand ("Pl. Mot.") at 6-8.)

    A.    **The ALJ's Decision to Reject the VE's Testimony that Cane Use Would Preclude Plaintiff's PRW Was Supported By Substantial Evidence.**

At Plaintiff's hearing, the VE testified that the RFC that the ALJ assigned in his opinion would preclude performance of Plaintiff's PRW because it includes "the use of a cane and [] commercial driving." (R. 57-58.) The ALJ questioned why an individual who needed a cane to climb stairs and walk on uneven ground would preclude Plaintiff's PRW, and the VE stated that she "grew up on a farm so there is uneven surfaces everywhere" and the individual "may – for example, [be] a farm agent meeting with farmers." (R. 58.) The ALJ asked what percentage of insurance agents "are walking around farm and construction sites or other uneven surfaces as opposed to in cities and stuff," and the VE estimated 30 percent, stating that it "just depends on where the insurance agent is, if it's in a rural community." (R. 59.) The ALJ then questioned why an insurance agent could not work while using a cane, and the VE responded that "[u]sually the insurance agent is also carrying a briefcase. . . . [which] could be pretty heavy." (R. 59-60.) The VE did not answer the ALJ's question as to the basis for her opinion "that someone could not walk using a cane carrying a briefcase," stating only that cane use was "an accommodation." (R. 60.)

Far from offering "no basis" for this decision as Plaintiff argues, the ALJ offered several reasons for rejecting the VE's testimony that the need for a cane when ambulating on uneven terrain or stairs would preclude Plaintiff's PRW as an insurance sales agent. (R. 28.) The ALJ explained that "the use of an assistive device is not addressed by the DOT," and "nothing in the DOT indicates that an individual working as a Sales Agent, Insurance would be required to walk on uneven terrain or on farms as alleged" by the VE. (R. 29.) In addition, the ALJ found the VE

4

"was unable to provide a satisfactory response" to his questions as to why a cane would preclude Plaintiff's PRW, because the VE testified "based on her lay experience living on a farm, not based on her professional experience as a [VE]," and thus the VE's testimony "lack[ed] support." (*Id.*) The ALJ ultimately "rel[ied] upon and adopt[ed]" the opinions of the non-examining state agency opinions insofar as they concluded Plaintiff could perform his PRW with an "RFC that required a hand-held assistive device for all ambulation." (*Id.*, citing R. 71-72; 79.)

ALJs traditionally rely on the DOT to understand the requirements of jobs in the national economy, and they "may" also obtain the help of a VE in making this determination. *See* Social Security Ruling ("SSR") 24-2p, https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-02-di-02.html (effective date June 22, 2024) ("When we determine whether an individual can perform their PRW, . . . [w]e may rely on descriptions of occupations from reliable sources of job information to determine how occupations are generally performed." A VE "may also provide information about how an occupation is generally performed in the national economy.") In cases where ALJs use "VEs as sources of job-related evidence," the value of their testimony lies in their ability to "provide expert vocational evidence . . . tailored to the specific facts of the cases . . . based on their professional knowledge, training, and experience and the vocational data available to them," and based on "reliable sources of occupational information . . . commonly used by vocational professionals." SSR 24-2p, https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html#FNR4 (Jan. 6, 2025). ALJs "must weigh the VE . . . evidence in the context of the overall record;" SSA rules "are controlling for [ALJs]. . . . If the [] VE does not provide the expected information and explanation outlined above, the [ALJ] will usually need to develop the record with sufficient evidence to make a supported finding at step four or step five of the sequential evaluation process." *Id*.

In this case, the ALJ supported his Step Four determination with substantial evidence. The ALJ explained that the VE's testimony did not provide the expected information because it was based on the VE's lay experience living on a farm, *not* on her professional vocational experience. The ALJ then reviewed the DOT, noting that it did not address the use of a cane by an insurance sales agent nor indicate that this job would require walking on uneven terrains or farms. And finally, the ALJ reviewed the other evidence in the record, and found persuasive the opinions of the non-examining state agency opinions that Plaintiff could perform his PRW while using a cane. Plaintiff bears the burden at Step Four to show that he was unable to perform his PRW, given the cane limitation in the RFC. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). But the only evidence Plaintiff offers in support of his argument that he could not perform his PRW is the VE's testimony, which the ALJ rejected based on substantial evidence, and unsupported speculation that "uneven pavement" and "all manner of urban hazards" would affect an insurance sales agent using a cane in the same way as on a farm. (Pl. Mot. at 9-10.) This does not undermine the substantial evidence that supports the ALJ's decision.

### B. The ALJ Decision Not to Include a Restriction Against Driving at Work in Plaintiff's RFC Was Supported By Substantial Evidence.

Plaintiff contends that the ALJ "simply dismissed" or "ignore[d]" Plaintiff's reports and medical findings that support his claim that he could not sit for more than 20 minutes at a time due to pain and reduced range of motion in his spine and lower body, and that "[i]t is unclear how an individual who not only suffers from chronic pain in his lower body but also has reduced range of motion in all directions of the cervical spine would be capable of driving for work." (Pl. Mot. at 8-9.) Plaintiff then concludes that "[t]he only conceivable explanation for the ALJ's somewhat surreptitious removal of the driving restriction is his clear predisposition to find that Plaintiff is not disabled at Step 4." (*Id.*)

But the ALJ did not "eliminate[]" or "surreptitious[ly] remov[e]" a restriction against driving at work in the RFC. (Pl. Mot. at 8-9.) The ALJ only raised this restriction in a *hypothetical* question to the VE, and "when posing various hypotheticals to the VE, the ALJ may not yet know what a claimant's RFC is." *Heather S. v. O'Malley*, No. 22 CV 1432, 2024 WL 2088178, at *4 (N.D. Ill. May 9, 2024) (citations and quotations omitted). When determining a claimant's RFC, the "ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). And "[t]he burden was on [Plaintiff] to 'prove []he is disabled by producing medical evidence.'" *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022), quoting *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021). *See also Combs v. Kijakazi*, 69 F.4th 428, 434 (7th Cir. 2023) ("[t]he burden is on the claimant to establish disability"). Plaintiff did not meet this burden, because, as Defendant points out, "[t]he ALJ's hypothetical question to the [VE] is not itself evidence that plaintiff has [a] driving limitation," and Plaintiff does not otherwise cite evidence in support of a driving restriction. (D.E. 20: Def. Resp. to Pl. Mot. ("Def. Resp.") at 8). By contrast, the ALJ's RFC finding as to Plaintiff's sitting ability (and the lack of a driving restriction) matches the non-examining state agency opinions. (R. 69, 77.)

Moreover, the ALJ did not "simply dismiss[] or "ignore" Plaintiff's claim that he could not sit for more than 20 minutes at a time due to pain and reduced range of motion in his spine and lower body. (Pl. Mem. at 8-9.) Rather, the ALJ reviewed Plaintiff's testimony as well as his reports in the medical record that he could only sit for up to 20 minutes before experiencing nerve pain and concluded that "this degree of limitation is not supported by the record," including physical exams and imaging evidence. (R. 26.) The ALJ acknowledged Plaintiff "was noted to have difficulty sitting still during mental health visits," but noted this was only during a two-month period and it was "unclear why he had such difficulty and whether such difficulty related to a

7

physical or mental impairment;" the ALJ pointed out that no other provider ever observed Plaintiff to have any difficulty sitting. (*Id*.) The ALJ's determination that Plaintiff's allegations of extreme sitting limitations were not credible was thus "not 'patently wrong,' as it would need to be for this court to reverse on that basis." *Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

      **C.**      **The ALJ's Determination that Plaintiff Could Perform His PRW With a Limitation to Occasional Overhead Reaching on the Right Is Not Reversible Error.**

In determining that Plaintiff could perform his PRW with an RFC limited to occasional overhead reaching on the right, the ALJ reviewed the DOT and the VE's testimony. The ALJ acknowledged that Plaintiff's PRW "requires frequent reaching per the DOT," but the ALJ stated that he "accept[ed]" the VE's testimony that Plaintiff could perform his PRW as an insurance sales agent with this overhead limitation "[i]n the absence of information to the contrary," as the DOT "does not address reaching with one or both upper extremities and reaching in various planes." (R. 29.) Plaintiff contends that the ALJ misconstrued the VE's testimony and violated SSR 00-4p (Pl. Mot. at 10-11), which required that the ALJ "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VEs . . . and information in the [DOT]." SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

The VE testified that an individual could perform Plaintiff's PRW with the assigned RFC, including the overhead reaching limitation (minus the cane and driving restrictions). (R. 61.) Plaintiff's counsel did not identify any issue with this testimony at the hearing, and the ALJ did not delve further into this limitation until issuing his opinion. The Court is not convinced that this violated SSR 00-4p, because the Seventh Circuit has held that VE testimony on a specific RFC limitation "merely supplement[s] (and d[oes] not conflict with) the [DOT]" where the DOT is silent on the specific limitation. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *see also*

8

*Collins v. Berryhill*, 743 F. App'x 21, 26 (7th Cir. 2018). The DOT lists only the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *2 (7th Cir. July 22, 2021).

Regardless, any error in the ALJ's failure to elicit further testimony from the VE about the whether the right-sided occasional overhead reaching limitation conflicted with the DOT is harmless because as of January 6, 2025, the SSA rescinded SSR 00-4p, and ALJs are "no longer require[d] . . . to identify and resolve conflicts between occupational information provided by VEs and information in the DOT" due, in part, to the concern that "[a]t the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified." SSR 24-2p. SSA rules "are controlling for" ALJs. *Id.* The SSA "expect[s] the [claimant's] representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing," *id.*, but Plaintiff's counsel did not do so here, and the ALJ adequately based his Step Four decision "on the vocational evidence in the case and the record overall." *Id*. Thus, the Court "will not remand [the] case to the ALJ for further specification [because] we are convinced that the ALJ will reach the same result." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022).

**V.     The ALJ's Decision Not to Include Limitations in Mental Functioning in the RFC Was Supported By Substantial Evidence.**

Plaintiff does not contest the ALJ's determination that his mental impairments were not severe, but Plaintiff argues the ALJ erred by not accounting for his mild mental limitations in the RFC, specifically as they relate to interacting with others and concentrating, persisting, or maintaining pace. (Pl. Mot. at 11.) But it is Plaintiff's burden to establish disability, *Combs*, 69 F.4th at 434, and Plaintiff fails to identify any "evidence-based restrictions that the ALJ could

9

include in a revised RFC finding on remand." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). He simply speculates that "[e]ven if [his] depression and anxiety, in and of themselves, do not cause limitations, that does not mean he does not suffer from limitations in work-related mental functioning." (Pl. Mot. at 12.)

By contrast, the ALJ weighed the evidence of Plaintiff's mental impairments. The ALJ noted that Plaintiff "only received mental health treatment for a period of two months during the relevant period," which "was limited to intermittent medication management visits," and that despite his testimony to the contrary, Plaintiff reported that "Cymbalta was improving both his physical and mental symptoms." (R. 26.) In addition, the ALJ found that "[w]hile [Plaintiff] made some subjective complaints of mild to moderate symptoms/low mood, [his] objective mental status examinations were benign," and he "reports no problems getting along with others, and the ability to pay attention for 'a considerable amount of time' and finish what he starts." (R. 21, 26.) Plaintiff briefly contends that the ALJ's assessment of his mental impairments was "flawed" (Pl. Mot. at 13), but Plaintiff provides no support for this contention. By weighing Plaintiff's limited treatment, positive response to medication, and normal mental status exams, the ALJ supported his determination as to Plaintiff's mental impairments with substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion to reverse and remand the ALJ's decision (D.E. 15) and grants Defendant's request for the Court to affirm (D.E. 20).

**SO ORDERED.**

                             **ENTER:**

                             **GABRIEL A. FUENTES**
                             **United States Magistrate Judge**

**DATED: February 4, 2025**